IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PEGGY DUTTON,

        Plaintiff,                    No. CIV S-05-2412 CMK

     vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.               ORDER

_____/

        Plaintiff, Peggy Dutton, brings this action for judicial review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) and Local Rule 72-302. The parties have filed cross motions for summary judgment. As both parties have consented to magistrate jurisdiction, the motions are before the undersigned for decision.

I. <u>Background</u>

        Plaintiff applied for Disability Insurance Benefits (DIB) on July 25, 2003 alleging disability due to a right shoulder injury. Plaintiff alleges that her disability is due to a car accident in 2002 and that she has not worked since. Plaintiff has a high school education, obtaining a GED. Plaintiff's past relevant work was as a bookkeeper, yard supervisor, and desk clerk.

1    Plaintiff's application was denied initially and upon reconsideration. A
2 hearing was held before an administrative law judge ( ALJ) Mark C. Ramsey on January 27,
3 2005.  Plaintiff was represented by an attorney during her hearing.  At the time of her
4 administrative hearing, plaintiff was forty-seven years old.  In his decision dated February 23,
5 2005, the ALJ made the following findings.

6    He found that plaintiff had not engaged in substantial gainful activity since her
7 2002 car accident. The ALJ determined that plaintiff's right shoulder, cervical and clavicle strain
8 and right knee arthritis are considered severe; however, he determined that none of these
9 impairments met or medically equaled one of the listed impairments in Appendix I, Subpart P,
10 Regulation No. 4.  The ALJ found that plaintiff's allegations regarding her limitations were only
11 partially credible. (Tr. 22.)  The ALJ concluded that plaintiff retained the residual functional
12 capacity to perform a significant range of light work tasks but was restricted from overhead work
13 with her right arm.  (Tr. 22-23.)  He noted that her past relevant work as a bookkeeper did not
14 require performance of work-related activities precluded by plaintiff's residual functional
15 capacity.  (Tr. 23.)  Thus, he determined that she could perform her past relevant work as a
16 bookkeeper and that she was not disabled.  (Tr. 23.)

17    The decision of the ALJ became final when the Appeals Council denied
18 plaintiff's request for a review on September 23, 2005.  The plaintiff filed a timely appeal in this
19 court.

20 II. Standard of Review

21    This court's review is limited to whether the Commissioner's decision to deny
22 benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported
23 by substantial evidence on the record as a whole.  See Copeland v. Bowen, 861 F.2d 536, 538
24 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573,
25 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but
26 less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v.

1  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable
2  mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389,
3  402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59
4  S. Ct. 206 (1938)). The court must consider both evidence that supports and evidence that
5  detracts from the Commissioner's decision, but the denial of benefits shall not be overturned
6  even if there is enough evidence in the record to support a contrary decision. See Jones v.
7  Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative
8  findings, or if there is conflicting evidence supporting a finding of either disability or
9  nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-
10 30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in
11 weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).
12 III.    Discussion
13        In her motion for summary judgment, plaintiff argues that the ALJ erred in failing
14 to use the testimony of a vocational expert in determining plaintiff's residual functional capacity
15 and that the ALJ erred in not ordering a consultative examination.
16        The court considers plaintiff's second claim of error–failure to order a
17 consultative examination, first. An ALJ has an independent duty to fully develop the record,
18 regardless of whether plaintiff is represented by counsel. See Smolen v. Chater, 80 F.3d 1273,
19 1288 (9th Cir. 1996); Delorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). In order to
20 demonstrate that the ALJ did not fulfill this duty, a claimant must point to relevant evidence that
21 the ALJ failed to obtain. See Tonapetyan v. Halter, 242 F.3d 11144, 1150 (9th Cir. 2001).
22        The underlying medical record reveals that plaintiff was involved in a car
23 accident in July 2002. (Tr. 116, 118.) Plaintiff was examined by Benjamin Ling, M.D., who
24 documented a slight cosmetic deformity in plaintiff's right shoulder. (Tr. 162.) Plaintiff had
25 some limited motion due to pain. (Tr. 163.) Plaintiff was referred to physical therapy. (Tr.
26 163.) In December 2002, plaintiff complained of shoulder pain and slightly reduced range of

motion. (Tr. 103.) She had surgery to repair her right shoulder subluxation (when a bone is partially moved out of place). (Tr. 100.) In 2003, Dr. Ling prescribed physical therapy. (Tr. 136.) Between February and June 2003, plaintiff underwent physical therapy. (Tr. 123-131.) When she was discharged in June 2003, she complained of pain only when she slept with her arm over her head. (Tr. 123.) Her physical therapist, Chuck Orofino, noted that plaintiff had no real pain during the day, no limitations with activity and functional ROM (range of motion) and strength. (Tr. 123-124.) Plaintiff was released to full duty. (Tr. 123.)

In January 2004, plaintiff reported to Dr. Ling that she had hurt her shoulder when she and her cat were attacked by dogs. (Tr. 159.) Dr. Ling noted some tenderness and reduced range of motion. (Tr. 159.)

In April 2004, plaintiff began treatment with Jeffrey Young, M.D. for complaints of right shoulder pain since a dog attack in January 2004. Dr. Young documented normal sensations, reflexes and muscle strength, with no muscle atrophy or pain with palpitation of the rotator cuff. In April 2004, Dr. Young noted that plaintiff had "modified duty with working at shoulder level, lifting 5 lbs. or less and no repetitive right arm use." (Tr. 178.) Plaintiff was to return to the clinic in a month. (Tr. 178.) In July 2004, Dr. Young noted that plaintiff had dull sharp and constant pain in her shoulder. (Tr. 165.) Dr. Young diagnosed shoulder strain, and he opined that plaintiff should not use her right arm. (Tr. 165.)

In his decision, the ALJ stated the following:

> The claimant was also seen by Jeffrey Young over a period of several months in 2004.... [In 2004] Dr. Young assessed that the claimant was fully capable of modified duty with working at the shoulder level; lifting five pounds or less; and with no repetitive use of the right arm. Although the claimant remained under treatment during the next several months and experienced noted improvement, Dr. Young imposed a complete restriction on the use of her right arm during that time. The undersigned finds Dr. Young's latter conclusion somewhat ambiguous considering his previous assessment finding that the claimant was capable of modified duty which included use of the right arm, other than for repetitive use or for above shoulder level activity and, thus, assigns minimal weight to Dr. Young's broad restriction of the right arm. The undersigned notes further that Dr. Young's aforementioned assessment is generally consistent with the body of evidence and, thus, finds it persuasive during deliberation.

(Tr. 20.)  The ALJ also considered the treatment notes of Chuck Orfino, PT at NovaCare Rehabilitation from 2002-2003, which stated that plaintiff had no real pain and no limitations with activity.  (Tr. 20.)

The ALJ partially rejected the opinion of plaintiff's treating physician Dr. Young, because he found Dr. Young's July 2004 conclusion that plaintiff's shoulder pain was worsening and she should not use her right arm "ambiguous" because Dr. Young had concluded in April that plaintiff could use her right arm with some restrictions on lifting (only five pounds) and no repetitive use.  The ALJ apparently credited the opinion of plaintiff's physical therapist, Chuck Orifino; however, this opinion was based on plaintiff's condition prior to the dog attack.

A treating  physician's uncontroverted opinion may only be rejected for clear and convincing evidence.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1996.)  Here, the ALJ apparently rejected Dr. Young's opinion because he found it "ambiguous."  However, there is no other medical opinion regarding plaintiff's limitations.  The ALJ may not properly rely on the opinion of plaintiff's physical therapist because that opinion was based on plaintiff's condition in 2002-2003, prior to her January 2004 dog attack.  The court is mindful that an ALJ is not required to order a consultative examination solely on the basis of a plaintiff's allegations unsupported by objective medical evidence, see 42 U.S.C. § 423(d)(5)(A); however, here there is no conclusion by the ALJ that plaintiff's allegations are not supported by objective medical evidence.[1]  The court finds that the ALJ's partial rejection of plaintiff's treating physician's uncontroverted opinion regarding plaintiff's limitations is not supported by clear and convincing evidence.  The court finds that, if the ALJ felt the medical evidence was ambiguous, the ALJ had a duty to further develop the record  by ordering an examination by a consultative examiner.  The court cannot find, as defendant urges, that the failure to credit plaintiff's treating physician's most recent assessment of her limitations was harmless error.

---

[1] The ALJ did find plaintiff's allegations of limitation only partially credible, but this was due to her descriptions of her daily activities and not based on objective medical evidence.

Accordingly, the court will remand this matter for further development, including a consultative examination. The court finds that the ALJ had a duty to further develop the record by ordering an examination by a consultative examiner.

As this matter is being remanded for further development of the medical record, the court declines to consider plaintiff's claim concerning the vocational expert testimony. It is not clear whether, after further development, plaintiff's limitations, if any, will fit within the Grids.[2]

IV.   Conclusion

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross motion for summary judgment is denied; and

3. This matter is remanded for further proceedings consistent with this order.

DATED: May 25, 2007.

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE

---

[2] The Medical-Vocational Grids are a matrix system for handling claims that involve substantially uniform levels of impairment. See 20 C.F.R. Part 404, Subpt P, App. 2. They are commonly known as the Grids.